STATE, EX REL. CITY OF TEKAMAH, RELATOR, V. GEORGE W. MARSH, AUDITOR, RESPONDENT.

FILED JUNE 22, 1922. No. 22769.

1. **Mandamus:** REGISTRATION OF MUNICIPAL BONDS. Where the state auditor refused to register municipal bonds for insufficient showing as to the legality of the debt funded thereby, and upon ap-

plication to this court for mandamus to compel their registration the defects in the showing are supplied, the writ will be allowed in the interests of justice, though such refusal might otherwise be approved.

2. **Municipal Corporations:** INDEBTEDNESS: RATIFICATION: BONDS. Where a municipal corporation incurred indebtedness for current expenses without having previously made an appropriation therefor, but for purposes within the general scope of its powers, and subsequently called a special election submitting to the electors a proposition to issue bonds for the purpose of funding such indebtedness, at which election a majority voted for the bonds; *held*, that the action of the city authorities was thereby ratified and such indebtedness validated, and the bonds entitled to registration.

Original proceeding in mandamus to compel respondent to register certain bonds of the city of Tekamah. *Writ allowed*

*Orville Chatt* and *Herbert Rhoades,* for relator.

*Clarence A. Davis, Attorney General,* and *Mason Wheeler, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, ALDRICH and DAY, JJ., REDICK, District Judge.

REDICK, District Judge.

Leave having been granted, relator brings an original mandamus action in this court to compel the state auditor to register certain bonds issued by the city of Tekamah for funding certain indebtedness of the city incurred for current expenses. The auditor bases his refusal upon the proposition that, from the certificate and showing filed with him upon the application to register, it does not sufficiently appear that the bonds were based upon a legal, valid debt against the city. The attorney general has not filed a brief for the reason, as stated by him in open court, that in his opinion the writ should be allowed.

The showing before the auditor on the point involved consists of a resolution of the mayor and council reciting the existence of an indebtedness of $50,000 for which war-

State, ex rel. City of Tekamah, v. Marsh.

rants had been issued and were outstanding; and the precise point of objection is that it does not appear for what purpose the debt was created, nor that an appropriation was made prior to the expenditure and issue of the warrants, as required by section 5186, Rev. St. 1913.

The statutes do not define the character of evidence upon which the auditor is required to act when bonds are presented for registration, but section 381, Rev. St. 1913, provides, "if he be satisfied that such bonds have been legally issued for a lawful purpose," he shall register the same. In this state of the record it may be a debatable point whether the recital above referred to is sufficient evidence to satisfy a conscientious officer that the bonds were issued for a lawful purpose. We have held that a pleading in an action upon contract brought against a municipality must affirmatively show a compliance with statutory requisites to a valid contract that it may be invulnerable to a demurrer. *Gutta Percha & Rubber Mfg. Co. v. Ogalalla*, 40 Neb. 775; *Tullock v. Webster County*, 46 Neb. 211. It is not thought that the rule so announced should be applied to a proceeding of this nature, but that the officer may and many times must rely upon the presumption of the regularity of official action where the statute does not require a specific showing. Section 382, Rev. St. 1913, requires the city clerk to furnish the auditor with "a duly certified transcript of all the proceedings had previous to the issuance of such bonds *relative thereto*," which would seem to include the call, notice and holding of the election, the result thereof, and ordinance providing for their issue. This was done and therefrom it appears that the bonds were "legally issued." The only other question for the auditor was whether they were issued for a "lawful purpose;" that purpose was to fund what was certified to be a "legal indebtedness" of the city. The purpose, then, was lawful as authorized by section 429, Rev. St. 1913, *provided* there was an indebtedness. We think the auditor would have been justified in registering the bonds on the face of the papers before him,

relying upon the presumption above mentioned on the question of the indebtedness.

·However, there is in the record before us an affidavit signed by the mayor and clerk of the city of Tekamah, by stipulation of the parties to have the same effect as a deposition, from which it appears that "said indebtedness was incurred for the repair and restoration of the light plant and for the purchase of equipment and the repair and restoration of the streets and roads leading into the said city of Tekamah;" and that the expenditures were made by unanimous vote of the city council, and "at a time when the same was absolutely essential to save the present improvements from serious losses." It does not appear that any appropriation had been made before the expenditures and issue of the warrants. It is therefore clear that no action could be maintained upon the warrants as such. *Gutta Percha & Rubber Mfg. Co. v. Village of Ogalalla* and *Tullock v. Webster County, supra.* But the relator contends that the evidence before the auditor. plus the evidence by affidavit in this record, is sufficient to show a liability against the city upon an implied contract to pay for materials and services, the benefit of which it received and retained, even though precedent legal requirements had not been complied with—citing, *inter alia, Rogers v. City of Omaha,* 76 Neb. 187, and *Nebraska Telephone Co. v. City of Red Cloud,* 94 Neb. 6. The cases cited sustain the doctrine that, where the contract was within the general powers granted the city, and it has received and retained the benefits thereof, natural justice requires that it pay to the extent of the benefits received; but the doctrine must not be extended, and its application should be considered with particular regard to the facts of each case in which it is recognized.

We are satisfied from the record before us that the expenditures in question were within the general powers of the city (Laws 1919, chs. 181, 182), were made in good faith, that the city has had the benefit thereof and is liable therefor. While, as we have indicated, the auditor

might .have registered the bonds in reliance upon the presumption of regularity of official acts, such presumption cannot prevail over established facts; and, although the absence of an appropriation does not affirmatively appear, we may safely assume its nonexistence.

What then, is the duty of the auditor? Must he require that the certificate shall show affirmatively the existence of every statutory step necessary to a valid contract; or is it sufficient if it appears that a claim exists against the city which under the laws of the state may be enforced in the courts? We hold that a claim sounding in contract, which may be enforced in the courts, is an indebtedness for the payment of which funding bonds may be issued under section 429, Rev. St. 1913, and that it is the duty of the auditor to register the bonds however the existence of the debt may be made to appear. It is probable that, if a more complete showing had been made before the auditor, he would have registered the bonds.

But there is another reason why these bonds should be registered as valid obligations. The debt, for want of prior appropriation, and perhaps other irregularities, was technically illegal, but, as above stated, was within the scope of the general powers of the city. Its illegal status resulted only from a failure of the city to proceed in a certain manner, not from a lack of power to make the contracts; the contracts were in no sense *ultra vires*. *Nebraska Telephone Co. v. City of Red Cloud*, 94 Neb. 6. Section 5184, Rev. St. 1913, whereby a prior appropriation is required, concludes: "No further appropriation shall be made at any other time within such fiscal year unless * * * first sanctioned by a majority of the legal voters." And chapters 181, 182, Laws 1919, provide that bonds may be issued on the vote of the people for the purposes for which this indebtedness was incurred. Had a vote of the people been taken in advance, there would be no question of the legality of the debt, and we have no doubt of the power of the people at an election regularly called to ratify an act which it might have authorized in the

first instance. In *Bell v. Waynesboro Borough,* 195 Pa. St. 299, where the borough had incurred an indebtedness in excess of the 2 per cent. allowed by law, and at an election subsequently held bonds were authorized to pay the floating indebtedness of the borough, including such excess, the court said: "In the present case we hold that the vote of November 7, 1899, authorizing the town council to create the indebtedness (by issue of bonds) for the express purpose of liquidating this floating debt, which had been irregularly contracted, was such a recognition and ratification of the debt as made it enforceable against the borough. It made valid that which was before illegal." See to the same effect *Roye v. Columbia Borough,* 192 Pa. St. 146. The same principle is recognized in *Marsh v. Fulton County,* 10 Wall. (U. S.) 676, though the attempted ratification in that case was by the board of supervisors and was held ineffectual.

We conclude that the bonds were entitled to registry and the writ should be allowed.

WRIT ALLOWED.