ELMER C. GEE ET AL., APPELLEES, v. CITY OF SUTTON, CLAY COUNTY, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT.

31 N. W. 2d 747

Filed April 8, 1948. No. 32389.

*John A. Bottorf,* for appellant.

*Krebs & Sullivan,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action at law brought by the plaintiffs to recover from the defendant city the reasonable value of street resurfacing and repairs performed by a partnership of which they were members under an oral agreement with the city officials. The agreement failed to comply with the statutory requirements and was an irregular contract. Jury was waived and trial had to the court. The court entered judgment in favor of the plaintiffs and against the defendant in the amount of $2,139.01, with interest thereon at six percent per annum from and after July 1, 1945. Upon the overruling of the motion for new trial, defendant appealed.

The plaintiffs' amended petition, insofar as it need be considered on this appeal, alleged in substance that prior to October 26, 1944, plaintiffs consulted with the officials of the city with reference to repair and resurfacing of certain streets. An agreement was reached whereby six separate blocks were to be repaired and treated with armor coat surfacing, for which the plaintiffs were to receive the sum of 30 cents per square yard. When the work was completed a settlement agreement was entered into by the parties wherein plaintiffs agreed to accept 24 cents per square yard, or a total of $2,500. Thereafter, in June 1946, plaintiffs again met and conferred with the mayor and council with reference to some holes which appeared in some of the streets surfaced by it. It was agreed that plaintiffs should repair the holes and leave a stock pile of material for defendant's further use in repairing and maintaining the streets. Certain repairs were made and a stock pile of material was left, accepted, and used by the defendant. By reason of a change of personnel in the city administration, and for the further reason that the agreements and proceedings with reference to the services rendered by plaintiffs were not fully or properly recorded in the minutes of the city council, the matter has not been adjudicated. Plaintiffs prayed for a judgment of $2,500 and interest, as the reasonable value of the services rendered.

The defendant, by answer, in effect denied that any agreement was entered into by and between the city and the plaintiffs, and all other elements with reference to the repair and resurfacing claimed by the plaintiffs. Defendant admitted. "That both parties are desirous of having this obligation settled and the only issue in this action is the reasonable value of said repairs and surfacing. That said matter has not heretofore been settled and paid by reason of the fact that the present Mayor and Council are all different individuals than were the officials of the city in 1945 * * * and proceed-

ings were not fully or properly recorded in the minutes of the Council." Defendant prayed for dismissal of the plaintiffs'. petition.

For convenience the appellant will be referred to as the city and the appellees will be referred to as the partnership.

The record discloses that Arthur I. Gee, one of the partners, in October 1944 contacted the mayor and some of the councilmen of the city with reference to repairing and surfacing some of the city streets. After some consultation, six city blocks were designated to be surfaced. Two members of the council testified that one or two blocks were to be surfaced as an experiment, and not six blocks; that the cost would be $250 to $300 a block, and if the work did not stand up no charge would be made; and that no payment would be required until July 1, 1945. The partnership brought its equipment, material and workmen to the city and repaired and surfaced six city blocks. The work took six days. Arthur I. Gee in his testimony denied that he made any agreement that if the work did not stand up it would not have to be paid for; and that during the progress of the job he had conversations with the mayor and different members of the council. The mayor testified that he saw the surfacing being done from time to time during the progress of the work.

It is apparent that the defendant city, by its officers, permitted the repair and surfacing of six city blocks without objection or protest.

The trial court, on this issue, resolved the facts in favor of the partnership. We consider this appeal on the basis of the repair and surfacing of six city blocks.

Elmer C. Gee, a member of the partnership and a graduate construction engineer, testified that the work was commenced on October 26, 1944. The original understanding with the city for the surfacing was on the basis of 30 cents a square yard. The total items of cost, including profits and engineering, at 30 cents a

square yard as originally computed, made a total of $3,086. Subsequently, when the work was completed, members of the partnership met with the city council and agreed to accept $2,500 to settle the job, thereby taking off the profit. Subsequent to the completion of the surfacing, in June 1946, the partnership, after meeting with the council, ascertained some holes had developed in the surfacing. The partnership agreed to repair the same, and agreed to and did leave a stock pile of material for the city to use on the repair of the streets.

This witness further testified to items of $373.61, the amount actually expended for oil; $318.75 for gravel; and an item for labor in the amount of $302.40, which included transportation of the men to the work from Minden where they were housed due to war conditions. There was a discrepancy in the figures with reference to the labor, too trivial to be of consequence and not seriously contested by the city. An item of $496.86, with reference to technical skill, engineering and profit was eliminated by the court. We deem it unnecessary to discuss this item; it was properly eliminated as it constituted profit and is covered to some extent in the item of supervision. This witness further testified to an item of $859 for equipment rental for the time the equipment was used on the job, in the following particulars: The cost of the equipment used, its life expectancy, and the amount per hour rental value of each item of equipment for the time used. Also, he testified to an item of $735.38, as constituting the fair and reasonable cost of supervision of the project, designated as wages, expenses and car for the superintendent, $300; wages, expenses and pickup used by the foreman on the job, $200; and office expense in the amount of $235.38.

The city set up a chart in its brief with reference to the items of equipment; the initial cost of equipment used; the life expectancy of equipment as given by the

partnership; the hours of use; the rental basis per hour; the total rental charged by the partnership for use; the actual cost to the partnership per hour for machinery; and the actual cost to the partnership for machinery used and repairs, including $9 for heating oil, making the total of the actual cost to the partnership, from the city's viewpoint, for the machinery used, and repairs, $89.05.

The two items testified to by the witness Elmer C. Gee, the rental use of equipment and the supervision of the project as heretofore mentioned, are the principal items which the city attacks on this appeal. The trial court reduced the item for the rental use of the equipment from $859 to $644.25, and reduced the item of supervision from $735.38 to $500.

It is conceded that the city had the authority to enter into a contract for street improvements such as in the instant case. There is no fraud shown, and while there is an attempt made on the part of the city to show that the partnership was not acting in good faith or no benefits were received, by evidence showing the condition of the surfacing and its deterioration, this evidence failed to convince the trial court that the partnership was not acting in good faith or that the city did not receive benefits from the work.

The sole issue involved in this appeal is the reasonable value of the street repairs, and surfacing done by the partnership for the city. The rule that governs in the instant case is expressed in the following authorities.

In State ex rel. City of Tekamah v. Marsh, 108 Neb. 835, 189 N. W. 381, it was said that: "* * * where the contract was within the general powers granted the city, and it has received and retained the benefits thereof, natural justice requires that it pay to the extent of the benefits received; but the doctrine must not be extended, and its application should be considered with

particular regard to the facts of each case in which it is recognized."

Where a municipal corporation receives and retains substantial benefits under a contract which it was authorized to make, but which was unenforceable because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received. See Lincoln Land Co. v. Village of Grant, 57 Neb. 70, 77 N. W. 349.

The rule is based upon the doctrine that one shall not take and keep another's property inequitably, even though no legal right to recover exists. While the action is legal in form, the doctrine upon which this court and other courts have allowed recovery in such cases is essentially equitable in its nature. Under strict legal principles no recovery could be had upon the contract, but it would be manifestly unfair that one party should have the benefit of the labor and property of another without recompense. Generally, the courts will not allow profits which might have been obtained if the contract had been legal and valid, and if recovery were had according to its terms, but confines recovery to such sum as will reasonably compensate the party whose services or property have been devoted to the advantage of the other.

In Miles v. Holt County, 86 Neb. 238, 125 N. W. 527, there appears language to the following effect. In such case where services are accepted without protest, defendant must pay reasonable value of services. The principle applied is that of reimbursement; and the plaintiff can only recover the actual cost of the services rendered and material furnished without the allowance of profits, and not exceeding the legal rate of interest.

The question presented in such cases is whether or not one who furnishes material and performs services for a county, or in this case a municipality, under an unenforceable contract from the result of which services the municipality has secured a municipal gain, can

be permitted to recover the value thereof, and if so, what is the rule to ascertain such reasonable value. See, also, Warren v. County of Stanton, 147 Neb. 32, 22 N. W. 2d 287; Rogers v. City of Omaha, 76 Neb. 187, 107 N. W. 214, and on rehearing, 80 Neb. 591, 114 N. W. 833.

With reference to the item as to the rental value of the equipment heretofore appearing, the city contends the trial court, without consideration of the actual cost of the equipment, substituted its personal knowledge of the life expectancy of the machinery; that the partnership is entitled to the actual cost of the equipment as used on the project, plus the expense of operation; and that the actual cost is the basis of recovery. Reference is made to Miles v. Holt County, *supra*.

The evidence on this item given by the witnesses for the partnership is as to the standard practice in the industry. The rental value of equipment is based upon the time on the job, not the use on the job but the time it is tied up from other work. The figures given constituted the reasonable rental value of the equipment by the hour use for the same, which is normally charged to small jobs. A witness for the city, an engineer, testified that the items as detailed by the witnesses for the partnership were the fair and reasonable cost for the type of work then engaged in.

The amount deducted by the court as profit was in excess of the amount the partnership claimed as profit on this item, which was 16 percent, and more than the city's expert allowed as profit, which was 15 percent. The city, by its expert witness, made no attempt to refute the reasonableness of this item.

Considering the standard practice in the industry as to the rental value of equipment, and the evidence with reference to the profit as testified to by the several witnesses and which the court eliminated, the court did not err in determining this item under the authorities as heretofore cited.

The city contends that the item for supervision of

the project wherein the court allowed an amount of $500, constitutes wages, expense, and transportation of two members of the partnership, one acting as superintendent and one as foreman of the project, and that the city is under no obligation to pay this amount. In this connection the city cites Beskas v. Calkins, 135 Neb. 323, 281 N. W. 29, as follows: "A partner is not entitled to charge the partnership account for his services unless there is an express agreement that he shall be compensated for such services." The case was one of accounting of the affairs of a partnership.

The case of Rasmussen v. Trico Feed Mills, 148 Neb. 855, 29 N. W. 2d 641, is also cited, as follows: "Ordinarily, when a partner renders service to the partnership, as is required of him in the partnership contract, he performs his obligation as a member of the partnership, and is not acting as a servant or employee." In this case, one partner was employed as the manager of the partnership by the other partners. This was a compensation case.

Section 67-318, R. S. 1943, is cited to the same effect.

The foregoing cited authorities are not pertinent to the facts in the instant case.

The testimony discloses that on a project such as here involved, supervision is necessary to obtain a proper result; the reasons are detailed in the evidence. This service was performed by two of the partners, one as superintendent, the other as foreman, and the city was charged certain compensation for this service. This service constituted a part of the costs of street surfacing, and would exist whether the workman was a partner or an employee. The city received the benefit of this work and service in the same manner and to the same extent as it was benefited by the work of other employees who worked in the construction of the street. This item was an element of cost, and not profit to the partnership. The authorities cited by the city are upon the issue of the right of a partner to recover from other

partners for personal services. We find no error on the part of the trial court in the allowance of this item. It goes to the issue here involved, the reasonable value of the street repair and surfacing.

The trial court allowed interest on the judgment rendered by it from and after July 1, 1945. The city contends the trial court erred in such respect.

In the case of Wittenberg v. Mollyneaux, 59 Neb. 203, 80 N. W. 824, this court refused allowance of interest until after the determination of the amount due on an action for breach of contract. This case was modified by Parkins v. Missouri P. Ry. Co., 76 Neb. 242, 107 N. W. 260, to the extent of allowing interest on breach of a contract where the amount to be recovered was capable of being determined by mathematical computation. It will be observed that the foregoing cases involved a breach of contract, as distinguished from the case at bar which involves the reasonable value of services rendered by the partnership to the city under an irregular contract, and are not pertinent to the factual situation in this case. It is apparent from the facts in the instant case that the amount of recovery could only be determined by suit at law. Interest on the amount could not be computed or ascertained by mathematical computation as of July 1, 1945, when the court found the amount to be due and allowed interest from that date.

"In order to recover interest there must be a fixed and determinate amount which could have been tendered and interest thereby stopped; the amount of the claim must be known and determined, or readily determinable." 47 C. J. S., Interest, § 19, p. 30.

Where the reasonable value of services rendered is not ascertained and adjudication thereof is required, interest is allowable only from the rendition of judgment. This is especially true where the account was not rendered before suit, and a greater sum was claimed than was allowed. See 47 C. J. S., Interest, § 19, p. 30.

We hold that where the reasonable value of services rendered pursuant to an irregular contract can only be ascertained by action at law, and interest thereon could not be computed with a degree of mathematical certainty, the legal rate of interest runs from the date of rendition of the judgment. We conclude that the trial court erred in allowing interest from July 1, 1945, and should have allowed the regular rate of interest from the date of rendition of the judgment.

"Where a jury is waived by the parties to an action at law in the district court, the findings of the trial judge on issues of fact are equivalent to the verdict of a jury and will not be reversed on appeal, if supported by sufficient evidence." Neill v. Dakota County, 140 Neb. 26, 299 N. W. 294. See, also, Donald v. Heller, 143 Neb. 600, 10 N. W. 2d 447.

For the reasons given in this opinion, the judgment of the trial court is modified to provide for the legal rate of interest from the date of rendition of the judgment, and as modified, is affirmed.

AFFIRMED AS MODIFIED.